UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SOON O. KIM, an individual,<br><br>    Plaintiff,<br>v.<br><br>HUMBOLDT COUNTY HOSPITAL DISTRICT, dba HUMBOLDT GENERAL HOSPITAL; MOE HANZLIK, MARY ORR, MEL HUMMEL, JIM FRENCH, and JIM PARRISH, individuals,<br><br>    Defendants. | Case No. 3:12-cv-00430-MMD-WGC<br><br>ORDER<br><br>(Defs.' Motion for Summary Judgment – dkt. no. 36) |

**I.    SUMMARY**

On March 25, 2015, the Court denied in part a Motion for Summary Judgment ("Motion") filed by Defendants Humboldt County Hospital District, dba Humboldt General Hospital ("HGH"), Moe Hanzlik, Mary Orr, Mel Hummel, Jim French, and Jim Parrish. (Dkt. no. 49.) The Court found that a genuine dispute of material fact existed with regard to Plaintiff Soon Kim's claim that Defendants had violated her First Amendment rights by terminating her employment in retaliation for her speech on matters of public concern. (*Id.* at 22.) The Court sought supplemental briefing on the remaining issue in Defendants' Motion — whether Defendants are entitled to summary judgment on Plaintiff's claim that Defendants retaliated against her decision to seek reelection to HGH's Board of Trustees ("Board"). (*Id.* at 22-23.) The Court has reviewed the parties' supplemental briefs (dkt. nos. 50, 51), and now addresses this remaining issue. Because

this Order addresses Plaintiff's separate theory of First Amendment retaliation for seeking reelection to the Board, it has no effect on the Court's previous partial denial of Defendants' Motion (dkt. no. 49).

**II.   BACKGROUND**

A detailed description of the undisputed facts appears in the Court's March 25, 2015, Order. (Dkt. no. 49 at 1-4.) The Court will summarize only those facts that are relevant to the remaining issue.

Plaintiff worked as HGH's general surgeon between November 2003 and August 2012. (Dkt. no. 36 at 3; dkt. no. 36-2, Exh. 2, at 18.) In November 2008, Plaintiff was elected to serve as a member of HGH's Board for a four-year term, which began in January 2009. (Dkt. no. 36-2, Exh. 2, at 34.) Plaintiff continued to work as HGH's general surgeon throughout that period. (*See id.*, Exh. 1 at 2 (Plaintiff's September 2010 Agreement for Physician Employment, which extended Plaintiff's employment with HGH through December 31, 2013).)

In January 2012, while Plaintiff was serving her first term as a Board member, the Board adopted a new corporate compliance policy ("Policy") to address conflicts of interest arising from staff members' service on the Board. (Dkt. no. 3 ¶¶ 3, 7; *see* dkt. no. 36-4, Exh. 7 at 11.) The Policy states, in part: "a Hospital employee shall not engage in any employment, activity or enterprise, including service on the Hospital Board, which is inconsistent, incompatible or in conflict with their duties as an employee." (Dkt. no. 36-4, Exh. 7 at 11.) The Policy further provides that if a conflict of interest arises, the employee may resign from his or her position "prior to taking and executing the oath of office and beginning the term of office," or take paid or unpaid leave. (*Id.*) Plaintiff abstained from voting on this provision during the Board's January 2012 meeting. (Dkt. no. 36 at 6; *see* dkt. no. 36-2, Exh. 2, at 20.)

Plaintiff filed for reelection to the Board two months later, in March 2012. (Dkt. no. 36-2, Exh. 2, at 27-28.) Several weeks later, on April 24, 2012, the Board unanimously voted to terminate Plaintiff's contract with HGH. (Dkt. no. 36-4, Exh. 8, at 22.)

Defendants Hanzlik, Orr, Hummel, and French participated in the vote; Plaintiff abstained. (*Id.*) The vote occurred after a presentation by Parrish, HGH's Administrator, and a Board discussion on the drawbacks of having a single surgeon at HGH, the need for additional surgeons at the hospital, and the potential benefits of hiring a surgical service for HGH. (*Id.*) Parrish had been researching surgical services for approximately one year before the presentation. (Dkt. no. 36-2, Exh. 2 at 26.) The Board voted to select a surgical service for HGH in May 2012. (*Id.*)

Plaintiff initiated this action on August 15, 2012. (Dkt. no. 1.) She filed a First Amended Complaint ("FAC") the next month, alleging violations of her First and Fourteenth Amendment rights. (Dkt. no. 3.) Although the parties participated in an Early Neutral Evaluation conference in February 2014, they could not resolve Plaintiff's First Amendment claim.[1] (Dkt. no. 33.) Defendants sought summary judgment on the First Amendment claim in April 2014. (Dkt. no. 36.) The Court denied the Motion in part in March 2015, and, for the reasons discussed below, the Court will deny the Motion with regard to the single remaining issue of whether Defendants retaliated against Plaintiff for seeking reelection to the Board.

### III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v.*

///

---

[1] The parties stipulated to dismiss the Fourteenth Amendment claim with prejudice. (Dkt. nos. 34, 35.)

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am. NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.   ANALYSIS**

In the FAC, Plaintiff asserts two theories to support her claim that Defendants violated her First Amendment rights by terminating her employment. According to

Plaintiff, Defendants retaliated against comments of public concern that Plaintiff had made in her capacity as a private citizen, and they retaliated against Plaintiff's attempt to seek reelection to the Board. (*See* dkt. no. 3 at 1-3.) Defendants sought summary judgment on both theories (dkt. no. 36 at 8-19), but the Court found that genuine issues of material fact foreclosed their Motion with regard to the first. (Dkt. no. 49 at 22.)

In the Motion, Defendants construed the second theory as challenging the constitutionality of HGH's Policy, which, as Defendants construe it, required employees to resign or take leave from their positions in order to serve as a member of the Board. (*See* dkt. no. 36 at 9-11.) Plaintiff countered that the Policy unconstitutionally infringed on her First Amendment interests in seeking public office. (Dkt. no. 42 at 3-8.) Based on those arguments, the Court sought supplemental briefing on two issues: (1) whether the Policy's constitutionality is dispositive of Plaintiff's claim that she was retaliated against for seeking reelection to the Board, and (2) if so, whether the Policy was a constitutional restriction on Plaintiff's First Amendment rights. (Dkt. no. 49 at 22-23.)

### A. The Policy's Constitutionality

After reviewing the parties' supplemental briefs, the Court finds that the Policy's constitutionality is neither relevant to, nor dispositive of, the remaining issue in Defendants' Motion. In the FAC, Plaintiff asserts that "Defendants . . . caused to be promulgated the [Policy] infringing upon Plaintiff's right to run for elected office, pursuant to which her contract was terminated." (Dkt. no. 3 ¶ 3.) She further claims that after announcing her intent to seek reelection to the Board, another Board member stated that she had "challenge[d]" the Policy, which "placed [the] Board in a really uncomfortable position of . . . having to possibly enforce this [P]olicy if she is elected." (*Id.* ¶ 8.) The Policy itself forecloses HGH employees from "engag[ing] in any employment, activity or enterprise, including service on the Hospital Board," if those activities would create conflicts of interest. (Dkt. no. 36-4, Exh. 7 at 11.)

Reading Plaintiff's claim as a challenge to the Policy's constitutionality, Defendants insist that the Policy was a proper limitation on Plaintiff's First Amendment

interests in seeking elected office. (*See* dkt. no. 36 at 9-11, dkt. no. 50 at 3-7, 10-11.) Such a limitation, they contend, is constitutional because the Supreme Court "ha[s] held that the existence of barriers to a candidate's access to the ballot 'does not itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)). But as Defendants remind the Court in their supplemental brief, Defendants have never asserted — except for hypothetical arguments — that Plaintiff was terminated because of the Policy. (Dkt. no. 50 at 2.) Instead, they contend that Plaintiff was terminated because the Board decided to contract with outside providers of surgical services. (*Id.*) Effectively, Defendants are arguing that it was constitutionally permissible to use the Policy to limit Plaintiff's ability to serve on the Board, even though they never applied the Policy to Plaintiff. The Court rejects this argument. Defendants cannot logically assert (1) that Plaintiff cannot make out a First Amendment claim because the Policy properly limited her ability to serve on the Board, and (2) that no such limitation ever occurred because Plaintiff was not fired pursuant to the Policy. As the Court understands it, Plaintiff's First Amendment claim is based not on the Board's use of the Policy to thwart her reelection bid, but rather on the Board's alleged retaliation against her decision to seek reelection. The Policy's constitutionality is not relevant to this determination.

Moreover, as Defendants point out (dkt. no. 36 at 12), Plaintiff has failed to produce any evidence indicating that she was fired pursuant to the Policy. The evidence instead indicates that the Board voted to terminate Plaintiff's employment contract at around the same time that it decided to seek outside surgical services. (*See* dkt. no. 36-4, Exh. 8 at 22 (minutes from the April 24, 2012, Board meeting, during which the Board voted to "pursue recruitment of additional surgical coverage" and "formally notify [Plaintiff] that . . . it is the intent of the board to terminate her contract following the required 180 days notice").) The Court has already found that genuine issues of material fact exist as to whether Plaintiff was terminated because of the Board's decision to pursue those outside surgical services, or whether the decision to seek surgical services

was pretextual. (Dkt. no. 49 at 22.) Because neither party has offered evidence suggesting that the Policy was ever applied to Plaintiff, the Court need not determine whether the Policy constitutionally limited Plaintiff's ability to seek reelection to the Board.

### B. Plaintiff's Retaliation Claim

The remaining issue, then, is whether Defendants are entitled to summary judgment on Plaintiff's claim that her firing was carried out in retaliation after Plaintiff filed for reelection to the Board. (*See* dkt. no. 36 at 11-13; dkt. no. 3 ¶ 11 (alleging that Plaintiff's candidacy for reelection "was a substantial motivating factor in the decision to terminate" her employment contract).) Defendants argue that Plaintiff's retaliation claim is legally deficient because Plaintiff "did not have a constitutionally protected right to remain employed by HGH." (Dkt. no. 36 at 11.) This argument misconstrues Plaintiff's allegations. Plaintiff does not allege that her termination alone was a constitutional deprivation; instead, she avers that her termination was the result of retaliation against her decision to run for the Board. (*See* dkt. no. 3 at 2-3.) As the Court held in its previous Order, genuine issues of material fact exist as to the cause of Plaintiff's termination. (Dkt. no. 49 at 22.) In light of that holding, the Court finds that Defendants have not demonstrated that they are entitled to summary judgment on the claim that Plaintiff's termination violated her First Amendment rights in seeking reelection to the Board.[2]

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the single remaining issue in the Motion.

///

///

---

[2] As noted above, this Order has no effect on the Court's previous Order (dkt. no. 49).

7

It is ordered that Defendants' Motion for Summary Judgment (dkt. no. 36) is denied with regard to the only remaining issue of whether Plaintiff was terminated because she sought reelection to the Board of Trustees.

DATED THIS 12th day of November 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE